

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXRD
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. W. S. Bussey, Chief
Weights and Measures Division
Department of Agriculture
Austin, Texas

Dear Sir:

Opinion No. O-1188
Re: Should the Department of Agriculture
issue a Certificate of Authority to Mr.
Mell under the facts set forth?

We are in receipt of your letter of July 25, 1939, in which you request this department to advise you as to whether or not the Department of Agriculture should issue a Certificate of Authority as a public weigher to a Mr. M. B. Mell of San Antonio, whose official bond has been approved by the Commissioners' Court and filed in the bond records of Bexar County. The applicant has remitted the required fee of $5.00.

You call our attention to Senate Bill No. 39, passed by the Forty-sixth Texas Legislature, which amends the present Public Weighers' law and affects Bexar County.

You are advised that this department has ruled Senate Bill No. 39 unconstitutional in an opinion No. O-868 by the Hon. Ross Carlton, Assistant Attorney General, dated June 5, 1939. It was held that it is a purely local law attempting to regulate the affairs of Bexar County, and as su is in violation of Article 3, Section 56 of the Constitution of the Sta of Texas.

As a result Senate Bill No. 39 would have no effect upon the issuan of a Certificate of Authority as a public weigher to Mr. M. B. Mell.

Numerous opinions have been written by this department on question: relating to public weighrs, first, who are appointed under Articles 568: and 5692, Revised Civil Statutes, 1925; and who qualify under Article 5' Revised Civil Statutes, 1925. We wish to refer you especially to the opinion dated September 22, 1927 to Hon. George B. Terrell, Commissione: of Agriculture, by the Hon. Joe S. Brown, Assistant Attorney General.

After quoting the Supreme Court of Texas in the case of Paschal v. Inman, 157 S.W. 1158, the opinion reads:

Honorable Geo. H. Sheppard, Page 2

"2. The total receipts deposited to the
Boiler Inspection Fund during the period from
June 3, 1937 through June 3, 1938 was $38,869.84.
These deposits actually began in September 1937.

"3. The total of warrants issued against
the Boiler Inspection Fund during the first year
(6-3-37 through 6-3-38) was $26,734.98, leaving
a balance at that date of $12,134.86. It is im-
possible to determine the amount of outstanding
obligations which were subsequently paid from
this balance.

"4. On August 8, 1938 the Treasurer was au-
thorized to transfer the sum of $10,000.00 from
the Boiler Inspection Fund to the General Revenue
Fund. No other transfers have been made.

"5. The balance on hand at June 3, 1938 was
$24.38 in the General Revenue appropriation and
$12,134.86 in the Boiler Inspection Fund."

Section 18 of House Bill No. 352, Acts of the 45th
Legislature, provides for an appropriation out of the General
Revenue Fund of the State of Texas in the sum of Twenty Thou-
sand Dollars ($20,000.00) or so much thereof as may be nec-
essary for the purpose of carrying out the provisions of the
Act, and also provides that whatever amount was expended out
of the appropriation should be replaced by the Commissioner
from fees collected under the terms of the Act during the
first year of its operation. Section 18 then continues with
the following provision:

1. Any moneys remaining in the fund at the
close of the fiscal year ending August 31, 1937,
are reappropriated to the use of the Commissioner
for the purpose of carrying out the provisions
of the Act.

2. Any unexpended balance of funds remain-
ing in the Boiler Inspection Fund at the close
of the fiscal year ending August 31, 1938, not
exceeding $10,000.00 is appropriated for the use
of the Commissioner in carrying out the purposes
of the Act.

3. For each succeeding fiscal year any un-
expended balance remaining in the fund not ex-

Honorable Geo. H. Sheppard, Page 3

ceeding $10,000.00 is to be carried forward for the purpose of enforcement of the Act.

4. Any amount remaining in the fund in excess of $10,000.00 at the close of any fiscal year after 1938 shall revert to the General Revenue Fund of the State of Texas.

According to the information you have furnished us, the whole of the $19,975.62 disbursed from the $20,000 General Revenue Appropriation should have been replaced. You will note, however, that while the Legislature provided for the replacement of such expenditures, it also provided that only fees collected during the first year's operation of the Act should be available for such use. For this reason the balance in the Boiler Inspection Fund as of August 31, 1938, the end of the first fiscal year, is unimportant except that it embraces and includes the balance on hand as of June 3, 1938, the end of the first year's operation of the Act.

The balance on hand in the Boiler Inspection Fund on June 3, 1938, was $12,134.86, and the whole of this amount should have been transferred to the General Revenue Fund. On August 8, 1938, $10,000.00 of this balance was so transferred, leaving $2,134.86 in the Boiler Inspection Fund which should have been applied to the General Revenue Appropriation.

In both your letter of September 8 and that of September 30 you point out that the balance in the Boiler Inspection Fund at the close of the fiscal year ending August 31, 1938, was $4,988.21 and it appears there has never been a lesser amount in this Fund than the balance appearing on August 31, 1938.

It is the opinion of this Department that the sum of $2,134.86, less the total amount of all warrants which have been paid and were issued for claims arising prior to June 3, 1938, should be transferred from the Boiler Inspection Fund to the General Revenue Fund in accordance with the requirements of Section 18 of House Bill 352, Acts of the 45th Legislature.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ross Carlton
Assistant

APPROVED OCT 17, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

RC:LM

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN